# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34513

BLACK LABRADOR INVESTING, LLC, )
)
    Petitioner-Respondent, ) Boise, June 2008 Term
)
v. ) 2009 Opinion No. 42
)
KUNA CITY COUNCIL and the CITY OF ) Filed: April 2, 2009
KUNA, IDAHO, a political subdivision of the )
State of Idaho, ) Stephen Kenyon, Clerk
)
    Respondents-Appellants. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable D. Duff McKee, District Judge.

The decision of the district court is <u>vacated</u> and the case is <u>remanded</u> with directions to dismiss the petition for judicial review.

Grove Legal Services, Nampa, for appellants. Randall Grove argued.

Real Estate Law Group, Eagle, for respondent. Eric Clark argued.

---

HORTON, Justice

    This appeal arises from a petition for judicial review from a city council's denial of an application for annexation. The Kuna City Council (the Council) denied an application for annexation by Respondent Black Labrador Investing, LLC (Black Labrador). Appellant City of Kuna (the City) appeals the district court's decision reversing and remanding the case to the Council for further proceedings. We hold that no statute authorizes judicial review in the instant case. Accordingly, we vacate the district court's order and remand to the district court for dismissal of the petition for judicial review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Black Labrador owns a 1.79-acre lot adjacent to the City in Ada County. Black Labrador initially planned to subdivide the property into two separate .89-acre lots and build a single-family home on each lot. Black Labrador sought permission from the City to annex and subdivide the property. Although the property had access to City water service, sewer lines were

1

located about a mile away. At the time of Black Labrador's application, the parties anticipated that City sewer service would be available to the property in about two years.

In lieu of connecting the two homes to the City's sewer service, Black Labrador planned to use an existing septic system and install an additional nitrate reducing septic system. Black Labrador also sought to enter into a development agreement with the City whereby Black Labrador would fit each home with "dry lines" to connect to the City sewer system once that service was available. The homeowners would then abandon the septic systems after connecting to City sewer.

The City Planning and Zoning Commission found that the annexation and lot split complied with the City Code, the City Comprehensive Plan, and I.C. § 50-222. On October 24, 2006, after a public hearing, the Planning and Zoning Commission recommended that the Council approve the annexation. On November 22, 2006, Black Labrador amended the development proposal to subdivide and develop the property into three lots of approximately .65 acre each. Black Labrador planned to install an additional nitrate reducing septic system to accommodate the third home. Black Labrador did not submit the amended development plan to the Planning and Zoning Commission for comment and recommendation.

The Council scheduled Black Labrador's annexation application for consideration on November 21, 2006. The Planning and Zoning Commission, however, asked that the Council table the matter until the December 5, 2006 meeting. During the November 21, 2006 meeting, Diane Sanders, the Planning and Zoning Director, and the Council discussed two proposed annexations that were similar to Black Labrador's application. Sanders indicated that the owners of properties near Meadow View and Ash streets, where City water service was available but City sewer service was not, had asked to install septic tanks on half-acre lots that would subsequently be annexed into the City. The property owners would install "dry lines" in the subdivisions for use when sewer service became available. Sanders asked the Council for its position regarding septic tanks on property the City would subsequently annex. The Council indicated that it did not want new developments installing septic tanks for use within City limits.

On December 1, 2006, the Central District Health Department (Health Department) sent the Council an opinion letter. The Health Department indicated that it was possible to put a septic system on a half-acre lot without a water well. Additionally, the Health Department indicated that a subdivision near Black Labrador's property conducted a nutrient pathogen study

2

a number of years ago under criteria that was more lenient than the standards in effect at the time of the instant controversy. That study resulted in a requirement for a minimum lot size of one acre due to the level of nitrates in the septic effluent. The Health District does not require a nutrient pathogen study unless a subdivision will discharge more than 600 gallons of effluent per day. Black Labrador's subdivision would not meet this threshold.

At the December 5, 2006 Council meeting, the Council indicated that it was concerned with the level of nitrates and phosphates Black Labrador's septic tanks would discharge. Steve Rule, a distributor of the AdvanTex septic systems Black Labrador hoped to install, addressed the Council at the meeting. Rule indicated that the AdvanTex septic systems could reduce nitrate discharge to acceptable levels. However, Rule indicated the system could not reduce the level of phosphates discharged from the septic systems.

The Council also indicated that the City was attempting to build a $30 million wastewater treatment facility in order to reduce its wastewater nitrate and phosphate footprints. The Council was wary of approving Black Labrador's application while also asking its citizens connected to the sewer system to pay for a treatment plant that would reduce waste levels below that of the AdvanTex septic systems. The Council was also wary of the fact that Black Labrador would use an existing septic tank on the property that would not reduce nitrates or phosphates. Based on this discussion, the Council voted unanimously to deny Black Labrador's proposed annexation.

The Council subsequently released its findings of fact and conclusions of law denying the application. The Council found that annexation without connection to the City sewer system was not in the public interest pursuant to Kuna City Code (KCC) 6-4-2-H. On December 7, 2006, Black Labrador filed a petition for judicial review asking the district court to set aside the decision of the Council and issue an order approving the annexation and lot split. On July 10, 2007, the district court issued its written decision reversing the Council's denial and remanding the case to the Council for further consideration. The district court ordered the Council to provide Black Labrador with a new hearing on its application, reconsider the application, and issue written findings of fact and conclusions of law based upon the record. The City timely appealed to this Court.

## II. STANDARD OF REVIEW

In an appeal from a district court's decision where the district court was acting in its appellate capacity under the Idaho Administrative Procedure Act (APA), this Court reviews the

agency record independently of the district court's decision. *Castenada v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998). This Court will defer to the agency's findings of fact unless those findings are clearly erroneous. *Id*. When supported by evidence in the record, the agency's factual determinations are binding on the reviewing court even when there is conflicting evidence before the agency. *Id*.

## III. ANALYSIS

In order to obtain judicial review of the City's decision regarding annexation, there must be a statute granting the right of judicial review. *Highlands Dev. Corp. v. City of Boise*, 145 Idaho 958, 960-61, 188 P.3d 900, 902-03 (2008) (citing *Gibson v. Ada County Sheriff's Dep't*., 139 Idaho 5, 8, 72 P.3d 845, 848 (2003)). Black Labrador argues that the APA, KCC, and the Local Land Use Planning Act (LLUPA) authorize judicial review of the City's denial of its annexation application. We disagree.

**A. There is no statutory right of judicial review of the City's denial of Black Labrador's application for annexation under the APA.**

The APA generally does not authorize judicial review of decisions made by counties or cities. *Highlands,* 145 Idaho at 960, 188 P.3d at 902; *Petersen v. Franklin County*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997). The judicial review standards found within the APA only apply to agency actions. *Gibson*, 139 Idaho at 7, 72 P.3d at 847. "'Counties and city governments are considered local governing bodies rather than agencies for purposes of the [APA].'" *Giltner Dairy, LLC v. Jerome County*, 145 Idaho 630, 632, 181 P.3d 1238, 1240 (2008) (quoting *Gibson*, 139 Idaho at 7, 72 P.3d at 847); s*ee also Idaho Historic Preservation Council, Inc. v. City Council of City of Boise*, 134 Idaho 651, 653, 8 P.3d 646, 648 (2000) (stating "[t]he language of the [APA] indicates that it is intended to govern the judicial review of decisions made by *state* administrative agencies, and not local governing bodies." (emphasis in original)).

Historically, this Court has characterized annexation decisions as legislative decisions by cities and therefore not subject to judicial review. *See Crane Creek Country Club v. City of Boise*, 121 Idaho 485, 487, 826 P.2d 446, 448 (1990) (holding that annexation is a legislative act of city government accomplished by the enactment of an ordinance and therefore not subject to writ of prohibition); *Burt v. City of Idaho Falls*, 105 Idaho 65, 68, 665 P.2d 1075, 1078 (1983).

Idaho Rule of Civil Procedure 84(a)(1) provides, in pertinent part, that "[a]ctions of state agencies or officers or actions of a local government, its officers or its units are not subject to

4

judicial review unless expressly authorized by statute." Thus, we must determine whether there is express statutory authorization for a party to obtain judicial review of a city's decision to deny a request for annexation.

> 1. Idaho Code § 50-222 does not authorize judicial review of the denial of Black Labrador's application for annexation.

The legislature has specifically authorized judicial review under the APA of a city council's annexation decision under certain circumstances. I.C. § 50-222(6). Idaho Code § 50-222 divides annexations into three categories: category A, B, and C.[1] Category A annexations are defined as follows:

> Category A: *Annexations wherein all private landowners raise no objection to annexation*, or annexations of any residential enclaved lands of less [than] one hundred (100) privately-owned parcels, irrespective of surface area, which are surrounded on all sides by land within a city or which are bounded on all sides by lands within a city and by lands for which owner approval must be given pursuant to subsection (5)(b)(v) of this section, or which are bounded on all sides by lands within a city and by the boundary of the city's area of city impact.

I.C. § 50-222(3)(a) (emphasis added).[2] Category B annexations involve lands that contain less than one hundred separate private ownerships where not all landowners consent to annexation, or lands that contain more than one hundred separate private ownerships where landowners owning more than fifty percent of the area of the lands consent to annexation, or lands that are subject to a development moratorium or a water or sewer connection restriction imposed by state or local health or environmental agencies. I.C. § 50-222(3)(b). Category C annexations involve lands that contain more than one hundred separate private ownerships where landowners owning more than fifty percent of the area of the lands have not consented to annexation. I.C. § 50-222(3)(c).

Idaho Code § 50-222(6) authorizes judicial review under the APA of a city council's decision to annex lands in category B and C annexations only. Idaho Code § 50-222(6) provides in relevant part:

> *The decision of a city council to annex and zone lands as a category B or category C annexation shall be subject to judicial review* in accordance with the

---

[1]     The legislature made minor changes to these categories during the 2008 legislative session. 2008 S.L. ch. 118, § 1, p. 327. The changes reflect technical changes to provide for better organization of the statute and to eliminate implied consent annexations after July 1, 2008. Statement of Purpose, 2008 S.L. ch. 118, § 1.

[2]     The version of I.C. § 50-222(3)(a) in effect at the time of the filing of this case contained a typographical error, and the word "that" was included in the place of the word "than."

5

procedures provided in chapter 52, title 67, Idaho Code, and pursuant to the standards set forth in section 67-5279, Idaho Code.

I.C. § 50-222(6) (emphasis added). Idaho Code § 50-222(6) also contains a broad grant of judicial review that applies to all annexations authorized by a city council: "All cases in which there may arise a question of the validity of any annexation under this section shall be advanced as a matter of immediate public interest and concern, and shall be heard by the district court at the earliest practicable time." I.C. § 50-222(6).

If the City had annexed Black Labrador's property, the action would have been a category A annexation as Black Labrador, the only private landowner involved, did not raise an objection to annexation. However, I.C. § 50-222(6) does not authorize judicial review of a category A annexation under the APA. The structure of I.C. § 50-222(6) clearly reflects that the right of judicial review is dependent upon an affirmative decision to annex property; the legislature did not provide for judicial review when a city has decided not to annex property.

Based upon its interpretation of the legislative intent behind I.C. § 50-222, Black Labrador argues that I.C. § 50-222 permits judicial review in cases involving a landowner that has initiated an annexation application as opposed to a city. We do not find it necessary to address Black Labrador's interpretation of the legislative intent behind I.C. § 50-222. Our inquiry begins and ends with the plain language of the statute. When this Court interprets a statute, it begins with the literal words of the statute, giving those words their plain, usual, and ordinary meaning. *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006). Additionally, this court must construe the statute as a whole. *Id*. The plain language of I.C. § 50-222 does not distinguish between annexations initiated by a city or a landowner. Therefore, it is improper for this Court to read this distinction into the statute.

Black Labrador also argues that the last sentence of I.C. § 50-222(6) authorizes judicial review of an annexation decision when there is a dispute concerning the annexation. That sentence provides: "All cases in which there may arise a question of the validity of any annexation under this section shall be advanced as a matter of immediate public interest and concern, and shall be heard by the district court at the earliest practicable time." I.C. § 50-222(6). However, judicial review under that sentence requires an affirmative decision by a city to annex property. The instant case does not involve an affirmative decision by the City to annex property. Therefore, we conclude that I.C. § 50-222(6) does not expressly authorize judicial review in the instant case.

### 2. The Kuna City Code does not create a right of judicial review of Black Labrador's application for annexation.

Black Labrador argues that KCC 5-1A-7 authorizes judicial review in accordance with I.R.C.P. 84(a)(1). Kuna City Code 5-1A-7, subsection E provides in relevant part: "The council shall provide the applicant written findings of fact and conclusions of law in accord with Idaho Code sections 67-6519 and 67-6535 stating the reasons for the decision." Idaho Code § 67-6519, in turn, provides in relevant part: "An applicant denied a permit or aggrieved by a decision may within twenty-eight (28) days after all remedies have been exhausted under local ordinance seek judicial review under the procedures provided by [the APA]."

Black Labrador's implicit assertion that a city ordinance can authorize judicial review is incorrect. This Court decided whether a county ordinance may authorize judicial review pursuant to the APA in *Gibson v. Ada County Sheriff's Department*. In *Gibson,* we determined the answer to this question depended on whether the county was empowered to enact a law providing for judicial review under the Idaho State Constitution. 139 Idaho at 8, 72 P.3d at 848.

We determined that a county's power to enact such a law was outside the scope of local police regulations delegated to counties under Article XII, § 2 of the Idaho State Constitution. Consequently, the county ordinance providing judicial review under the APA conflicted with the general laws of this State. *Id.* Article XII, § 2 of the Idaho State Constitution provides: "Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws." Because Article XII, § 2 applies to both cities and counties, our reasoning in *Gibson* applies to the instant case. Consequently, to the extent that the Kuna City Code may be interpreted as purporting to authorize judicial review under the APA, it conflicts with the general laws of this State, as did the county ordinance in *Gibson*. Accordingly, we conclude that KCC 5-1A-7 is not a basis for judicial review of the City's annexation decision.

### 3. LLUPA does not authorize judicial review of the City's denial of Black Labrador's application for annexation.

Black Labrador argues that the City's decision denying annexation did not satisfy the requirements of the Local Land Use Planning Act, I.C. § 67-6501 *et seq*. Specifically, Black Labrador asserts that the City's decision was inconsistent with the requirements of I.C. § 67-6535, which provides in relevant part:

7

(a) The approval or denial of any application provided for in this chapter shall be based upon standards and criteria which shall be set forth in the comprehensive plan, zoning ordinance or other appropriate ordinance or regulation of the city or county.

(b) The approval or denial of any application provided for in this chapter shall be in writing and accompanied by a reasoned statement that explains the criteria and standards considered relevant, states the relevant contested facts relied upon, and explains the rationale for the decision based on the applicable provisions of the comprehensive plan, relevant ordinance and statutory provisions, pertinent constitutional principles and factual information contained in the record.

Black Labrador argues that its application for annexation complied with the City's comprehensive plan, and all zoning ordinances, and therefore it was an abuse of discretion for the Council to deny the application. Additionally, Black Labrador argues that the City did not provide a reasoned statement explaining the rationale for the decision based on the applicable provisions of the comprehensive plan, relevant ordinances and statutory provisions, pertinent constitutional principles, and facts contained in the record.

Before we can address the merits of Black Labrador's claim, we must first consider whether LLUPA authorizes judicial review in this case. LLUPA authorizes judicial review in cases where a person has applied for and been denied a permit that is required or authorized under LLUPA. *Highlands*, 145 Idaho at 961, 188 P.3d at 903; I.C. § 67-6519. LLUPA specifically mentions special use permits, I.C. § 67-6512; subdivision permits, I.C. § 67-6513; planned unit development permits, I.C. § 67-6515; variance permits, I.C. § 67-6516; and building permits, I.C. § 67-6517. *Giltner Dairy*, 145 Idaho at 633, 181 P.3d at 1241. LLUPA also authorizes judicial review in cases where a person's interest in real property may be adversely affected by the issuance or denial of a permit authorizing development. I.C. § 67-6521. LLUPA does not mention any permit that relates to the annexation of land by a city. Black Labrador does not argue that the City denied it any permit required or authorized under LLUPA. Accordingly, we conclude that LLUPA does not authorize judicial review in the instant case.

## B. Black Labrador is not entitled to an award of attorney fees incurred on appeal.

Black Labrador seeks an award of attorney fees on appeal pursuant to I.C. § 12-117. Since Black Labrador has not prevailed in this appeal, it is not entitled to attorney fees under I.C.

§ 12-117. *Neighbors for a Healthy Gold Fork v. Valley County*, 145 Idaho 121, 138, 176 P.3d 126, 143 (2007).

## IV. CONCLUSION

We hold that no statute authorizes judicial review in the instant case. We vacate the district court's order and remand the matter to the district court with directions to dismiss the petition for judicial review.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.